**UNITED STATES v. DIECKMANN et al.**

**No. 6572.**

Circuit Court of Appeals, Seventh Circuit.

Jan. 13, 1939.

**422**

Andrew W. Kops, of Cincinnati, Ohio, and R. E. Noelker, of Batesville, Ind., for appellants.

Carl McFarland, Asst. Atty. Gen., Val Nolan, U. S. Atty., of Indianapolis, Ind., and Thomas E. Harris, C. R. Denny, Jr., and L. E. Jones, Jr., all of Washington, D. C., for the United States.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal from a judgment of award in a condemnation proceeding raises the question of the constitutionality of the action of the Federal Government in condemning privately owned land in an organized State for the purpose of creating a "demonstrational recreational park," pursuant to Title 2 of the National Industrial Recovery Act of 1933, § 201 et seq., 40 U.S. C.A. § 401 et seq.

Appellee filed its petition for condemnation and declaration of taking October 1, 1934, and its amended petition for condemnation April 15, 1935, reciting the estimated value of the land proposed to be taken at $2,000, which sum was deposited in the Registry of the Court. The petition named appellants (who are husband and wife) and numerous others as parties to the proceedings. In August, 1934, appellant Raphael had signed an option to sell the land involved for an agreed price of $2,000, with the understanding that if judicial procedure were deemed necessary, the compensation to be claimed by the owners and the award to be made for the lands should be on the basis of that purchase price. In September, 1935, appellants filed their demurrers to the petition accompanied by a memorandum setting forth the following reasons:

"The petition does not state facts sufficient to constitute a cause of action and is defective because the purpose for which the land is sought to be condemned is not a public purpose under purview of the Constitution of the United States, U.S.C.A. Const.Amend. 5.

"The United States has no authority under the Constitution to condemn lands for the purposes set out under the Act of Congress herein.

"That the Act of Congress upon which this suit is based is a delegation of delegated powers and provides no standards under which the President or his appointees may act."

The demurrers were overruled and appraisers were appointed over the objections of appellants. They appealed from the order of appointment, and this court, holding the appeal premature, dismissed it. See Dieckmann v. United States, 7 Cir., 88 F. 2d 902. Thereafter the appraisers were unable to agree as to the appraisal, and a second group of appraisers was appointed, again over the objections of appellants on the same grounds as had previously been relied upon, and, in addition, that the Act under which the Government was proceeding did not give the right to condemn property for recreational park purposes. This point had been raised for the first time in the brief before this court in the appeal held premature and dismissed. The new

appraisers assessed damages for the taking at $2300, of which they apportioned appellant Raphael's share at $1516.65; Alma's (arising out of her inchoate right of dower) at $758.33; and the county's for unpaid taxes, $25.02. Appellants excepted to the award, and upon hearing, a jury rendered a verdict of $2900, on which the court entered judgment directing payment of the entire sum (less the amount due the county) to Raphael. Both appellants applied for and were allowed an appeal, and they filed joint assignments of error.

At the outset, appellee seeks to foreclose our consideration of the merits of the cause on the ground that since the wife did not assign error as to the court's ruling that her husband was entitled to the entire award, the judgment is conclusive as to her, and since the two of them filed joint assignments of error, none being good as to her, none are available to him. Appellee cites and relies on Wimberly v. Cowan Investment Corp. 5 Cir., 80 F.2d 452, as authority for this proposition. However, we are unwilling to rest our decision of the case on this in view of the fact that this court has held that assignments of error are not jurisdictional. See Hultberg v. Anderson, 7 Cir., 203 F. 853, and cases there cited; Benjamin v. Buell, 7 Cir., 268 F. 792, 793. See also, for similar rulings of other Circuit Courts of Appeal, Bernard v. Lea, 4 Cir., 210 F. 583; Robinson v. U. S., 5 Cir., 84 F.2d 885; Robertson v. Morganton Full Fashioned Hosiery Co., 4 Cir., 95 F.2d 780. We are of opinion that since the rule as to the filing of assignments of error is not mandatory, we may relax it for good cause shown. We consider that where two parties join in an appeal as to subject-matter in which only one, in fact, has any interest, we are not obliged to dismiss the appeal for the reason that the other joined in the assignments of error. We therefore consider the errors as assigned by the party who does have the right to maintain the appeal.

Appellants contend that the Act of Congress under which the proceedings were had does not authorize the action, and that if it is held to, it is invalid and unconstitutional. Appellee contends that appellants have no right to question the authority of the Act having waived it by failing to present that question in their demurrers to the petition.

Condemnation proceedings by the Federal Government conform to state practice, in accordance with an Act of August 1, 1888, 40 U.S.C.A. § 258. The Indiana statute on Eminent Domain here applicable provides as follows (Burns' Indiana Statutes 1933, § 3-1705):

"Any defendant may object to such proceedings on the ground that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections. Such objections shall be in writing, separately stated and numbered, and shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement of objections shall be allowed in such cause * * * Provided, That amendments to pleadings may be made upon leave of court."

Under this provision we agree with appellee that appellants may raise only those objections which were originally filed to the proceedings, and may not now rely upon a question raised in the District Court for the first time after the premature appeal had been dismissed by this court. The record does not disclose that appellants ever asked leave to amend their objections to add the one now relied upon, as to the scope of the Act to cover the proceedings now before us. Hence that question was not before the District Court and will not be considered by us.

The questions, then, are, whether the use for which the condemned land was intended was a public use; whether the Constitution authorizes the Federal Government to condemn land for the purposes here set out; and whether the Act violates the constitutional inhibition against delegation of legislative powers.

The project for which the land was intended to be used is one of a series of public works undertaken by the Government under the authority of Title 2 of the National Industrial Recovery Act, 40 U.S. C.A. § 401 et seq. Under section 201(a), the President was authorized to create a Federal Emergency Administration of Public Works, the powers of which were to be exercised by an Administrator who was directed by section 202 to prepare a comprehensive program of public works including:

"(a) Construction, repair, and improvement of public highways and park ways,

public buildings, and any publicly owned instrumentalities and facilities; * * *

"(c) any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests of the general public."

Section 203 provided that, for the purpose of increasing employment quickly, the President, through the Administrator, should construct, finance, or aid in the construction or financing of any public works project included in the program prepared pursuant to section 202, and should acquire, by purchase or by the exercise of the power of eminent domain, any property, real or personal in connection with the construction of any such project.

■ Acting under this authority, the Administrator formulated his program, including the project here involved, the construction of a demonstrational, recreational park in Ripley County, Indiana, as a part of the National Park Service. We think there can be little question but that the intended use was a public one. The Government maintains a number of national parks, and this project is simply one of a number of new ones to be added to the service. This is essentially a public service of a kind heretofore carried on by the Federal Government for the public interest. "The *public use* implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies. * * * It has been said by a learned jurist that, 'if the public interest can be in any way promoted by the taking of private property, it must rest in the wisdom of the legislature to determine whether the benefit to the public will be of sufficient importance to render it expedient for them to exercise the right of eminent domain, and to authorize an interference with the private rights of individuals for that purpose.' (Citing 2 Kent, Com. 340.)" Cooley's Constitutional Limitations, (8th Ed.) Vol. 2, p. 1129. See, also, Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186.

The case of Shoemaker v. U. S., 147 U. S. 282, 13 S.Ct. 361, 37 L.Ed. 170, upheld the right of the Federal Government to condemn private property for the purpose of establishing a park within the confines of the District of Columbia. The case of U. S. v. Gettysburg Electric Ry. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576, upheld the right of the Government by virtue of its National defense function to condemn private property for the purpose of establishing a national park for historic purposes, to commemorate the battle of Gettysburg and mark and preserve the battle lines of that great battle. The Court there said, "* * * The government has the constitutional power to condemn the land for the proposed use. It is, of course, not necessary that the power of condemnation for such purpose be expressly given by the Constitution. The right to condemn at all is not so given. It results from the powers that are given, and it is implied because of its necessity, or because it is appropriate in exercising those powers."

■ The Act of 1888 previously referred to provides that "* * * in every case in which the Secretary of the Treasury or any other officer of the Government has been or shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so * * * ." Section 1, 40 U.S.C.A. § 257. Referring to this Act, the Supreme Court said, in Hanson Lumber Co. v. U. S., 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809, "The authority to condemn conferred by the last mentioned act extends to every case in which an officer of the Government is authorized to procure real estate for public uses." The Circuit Court of Appeals for the Tenth Circuit, in U. S. v. Threlkeld, 72 F.2d 464, certiorari denied 293 U. S. 620, 55 S.Ct. 215, 79 L.Ed. 708, cited this as authority for its holding that the Federal Government had power of eminent domain over lands needed for a highway, logging railroad, skidway, and landing ground to be used in connection with a previously established national forest. We think that if such power of eminent domain exists as to lands needed in connection with a previously established service such as a forest or park, the same is true of one in process of establishment, and that since the right of the Government to maintain a system of national parks has never been challenged, its right to procure lands for their establishment must be recognized, and under the statute referred to in Hanson Lumber Co. v. U. S., supra, if the Government may procure lands, it may do so by condemnation proceedings. It follows that the Act under which the proceedings were carried

on does not exceed the Constitutional powers of Congress.

Appellants also urge that the Act unduly delegates legislative powers to the Executive. The Act was held valid by the Circuit Courts of Appeals for the Fourth and Tenth Circuits, which discussed the question of delegation of powers and determined that the Act could not be condemned as an unconstitutional delegation of legislative powers. See Greenwood County v. Duke Power Co., 4 Cir., 81 F.2d 986, and Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665; Kansas Gas & Electric Co. v. Independence, 10 Cir., 79 F.2d 32, 100 A.L.R. 1479. In the former case, the court referred to the distinction stated in Cincinnati, etc., R. Co. v. Clinton County Commissioners, 1 Ohio St. 77, and quoted with approval in Hampton, Jr., & Co. v. U. S.,

276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624: "The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." Here the Act authorized the President through the Administrator to formulate a program of public works for the relief of unemployment, and to put that program into effect. We think the formulation and execution of that program are administrative acts rather than legislative, and that the Act, therefore, does not constitute an undue delegation of legislative powers to the Executive.

Judgment affirmed.