## UNITED STATES v. DICKSON.

### No. 8513.

Circuit Court of Appeals, Fifth Circuit.

Nov. 3, 1937.

Keith L. Seegmiller, Atty., Department of Justice, and Julius C. Martin, Director, Bureau of War Risk Litigation, both of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., and Lawrence S. Camp, U. S. Atty., and A. Sidney Camp, Asst. U. S. Atty., both of Atlanta, Ga., for the United States.

John T. Dennis, of Atlanta, Ga., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

### HUTCHESON, Circuit Judge.

The suit was on a United States government 5-year convertible term war risk policy, effective July 21, 1927, and in force by payment of premiums until 1932. The claim was that before the policy lapsed for nonpayment of premiums plaintiff was and became totally and permanently disabled within the policy terms. The defense was a general denial.

The District Judge thought that the questions the record raised as to the nature and extent of plaintiff's disablements, and as to whether his working was done at the expense of his health, were peculiarly questions for the jury. He sent the case to them on general instructions, none of which are complained of.

Appellant insisted in the court below and insists here that though plaintiff's evidence does show that from and after the first onset of the serious disablement, plaintiff was suffering from severe disabilities, none of them were in effect totally and permanently disabling. It urges upon us that this is conclusively shown to be so by the testimony that plaintiff worked as a druggist and clerk in a drug store for part of 1933 and 1934, and operated a drug store with his brother in 1934, 1935, and 1936. Appellee, admitting that he did work some in these years, urged below and urges here that he could not and did not do so except with great difficulty, and with great detriment to his health, and that his condition at the time he filed his suit, and at the trial, is conclusive proof that this is so. Pointing to the testimony as to the difficulties he experienced in doing the work, and the injury to his health that accompanied the doing, and to the fact that for a part of the time he was working for an intimate friend, and for the other part he was working in a store he himself owned and controlled, he insists that the evidence made a jury issue, and that the verdict ought to stand. Both appellant and appellee cite and rely upon published opinions in war risk cases to support their respective claims.

We pointed out in Vineyard's Case how difficult it sometimes is in these cases to determine whether the record makes a jury issue, and that, "in the end whether a verdict should be instructed is one for the exercise of judgment, not for the mechanical application of formulae." United States v. Vineyard (C.C.A.) 71 F.(2d) 624, 626.

The District Judge, who is "primarily responsible for the outcome of the trial," Wise v. United States (C.C.A.) 63 F.(2d) 307, United States v. Sorrow (C.C.A.) 67 F.(2d) 372, thought a jury issue was made out.

A careful reading of the record convinces us that there was reasonable ground for his doing so, and that no ground for disturbing his action is made to appear.

The judgment is affirmed.